Melvin Kennedy CRAWFORD, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–93–01129–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 17, 1994.

John T. Quinn, Bryan, for appellant.

Glynis McDaniel, Bryan, for appellee.

Before SEARS, DRAUGHN and BARRON, JJ.

## OPINION

SEARS, Justice.

Appellant entered a plea of not guilty before a jury to the offense of robbery. Tex. Penal Code Ann. § 29.02 (Vernon 1989).[1] The jury found him guilty and found the second enhancement paragraph true. (The State waived the first enhancement paragraph). The judge sentenced appellant to sixty-three years in the Texas Department of Criminal Justice, Institutional Division in accordance with the jury's assessment. In one point of error, appellant complains the evidence is insufficient to sustain his conviction. We affirm.

At about 6:00 P.M. on January 5, 1993, Carolyn Ruffino, the District Judge of the 361st Judicial District Court in Brazos County, went to a house owned by St. Anthony's Catholic Church in Bryan. The house was used for services during renovation of the church's main sanctuary, and Judge Ruffino went inside to place scripture readings into the lectionary. Shortly after she arrived, she heard a noise and saw appellant entering the building. Appellant looked at Judge Ruffino and said, "Give me a quarter." She replied, "I don't have any money." Appellant then picked up a large metal crucifix and hit Judge Ruffino twice across the face. One blow landed on the bridge of her nose, fracturing it, and the other hit her on the right side of her forehead. Judge Ruffino fell backwards, landing on her back. Appellant proceeded towards her and Judge Ruffino lunged toward him, stating, "I will get you," and "Jesus, Jesus, help this man." Appellant then became startled, and fled. Judge Ruffino washed the blood from her face, and looked for her eye glasses, which had been knocked off during the scuffle. As she was leaving, she found her glasses outside the door. She went across the street to the main sanctuary and told Father Malinowski, the parish priest, what happened.

The next day, Judge Ruffino reported the incident to Lieutenant Gene Knowles of the Bryan Police Department and met with him at the scene of the crime. The following day she gave a statement and identified appellant in a photo lineup. Because she was only sixty percent sure of the identification, she requested a physical lineup. At the physical lineup the following Monday, she positively identified appellant.

Suecia Trejo, a woman who lived near St. Anthony's Church, testified at trial. At the time of the incident, she had known appellant for a couple of months. She had conversations with appellant in the past where he had asked for money, sometimes specifically requesting a quarter. Shortly after Judge Ruffino was attacked, Trejo asked appellant if he had heard about what happened at the church. Appellant responded, "How did you know?" Trejo then asked appellant, "Melvin, did you hit that lady in the church?" Appellant responded, "That bitch wouldn't give me a quarter. She got what she deserved."

In his defense, appellant presented the testimony of John Comacho. Comacho testified appellant had been living with him at his house for two years and that appellant was at home at the time of the offense. He testified he could remember the date because it was the first day since his wife's death that he had done some cooking in the kitchen. Appellant also pointed out through the State's witnesses that the incident was originally reported and referred to as an assault.

In his sole point of error, appellant claims the evidence was insufficient to support a guilty verdict because the State did not establish beyond a reasonable doubt that appellant attempted to commit theft. Appellant argues that the State tried to satisfy the theft element for robbery by showing appellant attempted to steal Judge Ruffino's eye glasses, even though he abandoned them outside the door of the house. Appellant con-

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

tends the State failed to prove he intended to and attempted to steal the judge's glasses. Contrary to appellant's assertion, the State never contended appellant attempted to steal the glasses, but instead the State argued and proved that he intended to and attempted to take "money" from Judge Ruffino.

■ A person commits robbery if in the course of committing theft, and with the intent to obtain or maintain control of the property, he intentionally, knowingly or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a)(1) (Vernon 1989). "In the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX.PENAL CODE ANN. § 29.01(1) (Vernon 1989). Thus, actual commission of the offense of theft is not a prerequisite to the commission of robbery; the gravamen of robbery is the assaultive conduct, not the theft. *Green v. State,* 840 S.W.2d 394, 401 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993).

■ In assessing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993). In applying this standard, we resolve any inconsistencies in favor of the verdict. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). We do not position ourselves as a thirteenth juror in assessing the evidence. *Id.*

■ We hold that the evidence is sufficient to support the jury's verdict. Appellant demanded money—a quarter. In a prosecution for robbery of money, it is immaterial how much money is involved. *Byrd v. State,* 456 S.W.2d 931, 932 (Tex.Crim.App.1970); *see also Winn v. State,* 503 S.W.2d 816, 818 (Tex.Crim.App.1974) (thirty to forty cents in a purse is sufficient to satisfy the "taking of money" element in a robbery prosecution).

Intent to steal property may also be inferred from the defendant's actions. *Taylor v. State,* 859 S.W.2d 466, 468 (Tex.App.—Dallas 1993, no pet.). When Judge Ruffino refused to give him money, appellant beat her. A jury may reasonably infer from the force used in the assault that the defendant was aware his conduct was reasonably certain to cause physical pain and bodily injury, satisfying the requisite culpability needed to constitute the offense of robbery. *Lane v. State,* 763 S.W.2d 785, 787–88 (Tex.Crim.App.1989). Appellant continued to move toward Judge Ruffino after she fell. Appellant admitted to Trejo that he attacked Judge Ruffino because she refused to give him a quarter. We conclude these actions and appellant's statement constitute sufficient evidence for the jury to conclude appellant intended to steal money from Judge Ruffino. No completed theft is needed to find a defendant guilty of robbery. *White v. State,* 671 S.W.2d 40, 42 (Tex.Crim.App.1984). The jury could also reasonably conclude appellant assaulted Judge Ruffino in an attempt to steal money, or that the violence accompanied his escape after an attempted theft. *See White,* 671 S.W.2d at 42.

■ As the trier of fact, the jury is the judge of the credibility of the witnesses and the weight to be given to their testimony; it is free to accept or reject the testimony of any witnesses. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury was given a charge on the lesser included offense of assault, but found appellant guilty of robbery. We conclude that a rational trier of fact could find the State had proven the essential elements of robbery beyond a reasonable doubt.

We overrule appellant's point of error and affirm the judgment of the trial court.