Affirmed and Memorandum Opinion filed June 3, 2008








Affirmed and Memorandum Opinion filed June 3, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00939-CR

____________

 

JOE SAUCEDO, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 1045480

 



 

M E M O R A N D U M   O P I N I O N

Appellant Joe Saucedo, Jr. appeals his conviction for
aggravated robbery with a deadly weapon, claiming legal and factual
insufficiency of the evidence and ineffective assistance of counsel.  We
affirm.

I.  Factual and Procedural Background








Complainant Humberto Arias was driving alone in a vehicle
and was stopped at a stop sign when appellant and another man entered Arias=s car.  Appellant
got into the back seat, and the other man got into the front passenger seat. 
Appellant pointed a gun at Arias, demanded Arias=s wallet, and
threatened to shoot Arias.  Appellant=s companion held
what appeared to be a gun underneath his shirt and also threatened to shoot
Arias.  Appellant took Arias=s wallet from his back pocket.  Appellant
then went to the driver=s side of the car and ordered Arias out of
the vehicle.  Appellant pushed Arias aside and got into the driver=s seat.  Appellant
and his companion drove away with Arias=s wallet and the
car.

Arias flagged down a passing motorist, Samuel Martinez, who
offered to help.  In Martinez=s vehicle, Arias and Martinez followed
appellant, who was driving at high rates of speed in the car he had just taken
from Arias.  Arias and Martinez saw appellant crash Arias=s car into a
ditch.  Arias armed himself with a pocketknife he borrowed from Martinez. 
Arias left Martinez=s car and approached appellant and
appellant=s companion.  Appellant pointed a gun at Arias, and
Arias believed the companion also was pointing a gun at him.  Arias confronted
appellant, and appellant threw Arias=s wallet at
Arias.  Arias chased appellant on foot for several blocks before appellant
threw the gun under a house.  Martinez notified police, who arrested appellant
and recovered a BB gun from under the house.  Police could not locate appellant=s companion or any
other firearm.

Appellant was charged with aggravated robbery with a deadly
weapon, to which he pleaded Anot guilty.@  Arias and
Martinez testified at trial.  The responding officer testified that the BB gun
recovered at the scene was capable of causing serious bodily injury and could
be considered a deadly weapon.

The only other account of the night=s events was a
videotaped statement appellant made while in police custody.  In the video,
appellant indicated he and his companion, ATony,@ intended to rob
Arias of his Adope.@  In appellant=s account of events,
appellant stated ATony@ held a toy gun
and that appellant sat in the back seat.

A jury found appellant guilty of aggravated robbery with a
deadly weapon and sentenced appellant to fifty years= confinement.

 








II.  Issues and Analysis

A.      Is the evidence legally and
factually sufficient to support appellant=s conviction?

In two issues, appellant challenges the legal and factual
sufficiency of the evidence on the basis that the State did not prove beyond a
reasonable doubt that appellant committed the offense of aggravated robbery
with a deadly weapon.  Appellant claims the evidence does not support that
appellant had the gun.  He also contends that the State failed to prove the
aggravated element of use of a deadly weapon.  Additionally, appellant points
to Arias=s two prior
convictions for theft as suggesting that the events unfolded as an unsuccessful
drug deal in which appellant actually was trying to recover his own property
from Arias.

In evaluating a legal‑sufficiency challenge, we view
the evidence in the light most favorable to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether
we, as a court, believe the State=s evidence or
believe that appellant=s evidence outweighs the State=s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses= testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).








In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether we
are able to say, with some objective basis in the record, that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 414B17 (Tex. Crim. App. 2006).  It is not enough that this court
harbor a subjective level of reasonable doubt to overturn a conviction that is
founded on legally sufficient evidence, and this court cannot declare that a
conflict in the evidence justifies a new trial simply because it disagrees with
the jury=s resolution of that conflict.  Id.
at 417.  If this court determines the evidence is factually insufficient, it
must explain in exactly what way it perceives the conflicting evidence greatly
to preponderate against conviction.  Id. at 414B17.  Our evaluation should not
intrude upon the fact finder=s role as the sole judge of the weight and credibility given
to any witness=s testimony.  See Fuentes, 991 S.W.2d at 271.  In conducting a
factual‑sufficiency review, we discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

A person commits the offense of aggravated robbery if, in
the course of committing theft and with intent to obtain and maintain control
of property, that person knowingly or intentionally threatened or placed
another in fear of imminent bodily injury or death and used or exhibited a
deadly weapon.  Tex. Penal Code Ann.
'' 29.02(a)(2),
29.03(a)(2) (Vernon 2003); see Robinson v. State, 596 S.W.2d 130, 132
(Tex. Crim. App. 1980).  An individual does not have to successfully commit
theft in order to commit robbery.  See Crawford v. State, 889 S.W.2d
582, 584 (Tex. App.CHouston [14th Dist.] 1994, no pet.).








The law of parties provides that a person is criminally
responsible for an offense committed by the conduct of another if the person
acts with intent to promote or assist the commission of the offense and
solicits, encourages, directs, aids, or attempts to aid the other person in
committing the offense.  Tex. Penal Code
Ann. ' 7.02(a)(2) (Vernon 2003).  Under the law of parties,
the evidence supports the conviction when the person was physically present at
the commission of the offense and encouraged the commission of the offense by
words or other agreement.  See Ransom v. State, 920 S.W.2d 288, 302
(Tex. Crim. App. 1994) (op. on reh=g).  To determine
whether the defendant was a party, we may examine the events occurring before,
during, and after the commission of the offense and rely on the actions of the
defendant, which show an understanding of a common design to commit the
offense.  Id. 

Appellant stated on the videotape that he and ATony@ intended to rob
Arias of his Adope.@  Arias testified that appellant pointed a
gun at him and threatened to shoot if Arias did not surrender his wallet. 
Arias testified that appellant took both his wallet and the car.  Martinez
testified that when Arias confronted appellant, appellant pointed a gun at
Arias before throwing the wallet to Arias.  Both appellant and Martinez saw
appellant throw the gun beneath the house.  Even if appellant had only a BB
gun, the responding officer testified that the BB gun recovered from under the
house was capable of causing serious bodily injury and could be considered a
deadly weapon.  See Adame v. State, 69 S.W.3d 581, 582 (Tex. Crim. App.
2002); see also Tex. Penal Code
Ann. ' 1.07(a)(17)(B) (Vernon 2003) (defining a deadly
weapon as Aanything that in the manner of its use or intended use
is capable of causing serious bodily injury@).  In viewing the
evidence in the light most favorable to the verdict, the jury, as a rational
trier of fact, could have found beyond a reasonable doubt the essential
elements of aggravated robbery with a deadly weapon.  See Wesbrook,
29 S.W.3d at 111; McDuff, 939 S.W.2d at 614; Jasso v. State, 112
S.W.3d 805, 808B09 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d).  








Furthermore, under the law of parties, the evidence is
sufficient to support a conviction when, as in this case, appellant was
physically present at the commission of the offense and encouraged the
principal to commit the offense by words or agreement.  See Tex. Penal Code Ann. ' 7.02(a)(2); Ransom,
920 S.W.2d at 302.  Appellant and his companion took off together in Arias=s car after taking
Arias=s wallet.  Under
the law of parties, the evidence is sufficient to show that appellant, both in
his presence and by leaving with ATony,@ aided his
companion in committing the offense and acted with the intent to assist.  See
Tex. Penal Code Ann. ' 7.02(a)(2); Ransom,
920 S.W.2d at 302.  Additionally, even if appellant did not personally use a
deadly weapon, the record reflects that appellant=s companion acted
as if he were holding a gun beneath his shirt.  The evidence is sufficient to
sustain the deadly weapon element with regard to the companion.  See Wright
v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979).  Therefore, under the
law of parties, appellant is guilty of both the charged offense and the
aggravated element because appellant=s companion also
appeared to have a gun in the course of taking Arias=s wallet and car. 
See Tex. Penal Code Ann. ' 7.02(a)(2); Ransom,
920 S.W.2d at 302; Wright, 591 S.W.2d at 459.

No evidence suggests that the events unfolded as a Adrug deal gone
bad,@ in which
appellant attempted to justly recover money from Arias, as appellant claims on
appeal.  In fact, to the contrary, appellant=s videotaped
statement contains appellant=s own words that he and ATony@ planned to rob
Arias.  The jury, as the sole judge of the credibility of the witnesses and of
the strength of the evidence, could choose to believe or disbelieve any portion
of the witnesses= testimony.  Fuentes, 991
S.W.2d at 271; Sharp, 707 S.W.2d at 614.  Given the testimony from Arias
and Martinez, even viewing the evidence in a neutral light, we cannot conclude
that appellant=s conviction is Aclearly wrong@ or Amanifestly unjust@ or that the great weight and
preponderance of the evidence contradicts the jury=s verdict.  See Watson, 204
S.W.3d at 414B17.  Accordingly, we overrule appellant=s first two
issues.

B.      Did
appellant receive ineffective assistance of counsel?

Appellant cites to four instances during the
guilt-innocence phase in which he claims his trial counsel offered ineffective
assistance:  (1) failure to file a motion for an investigator, (2) alleged
failure to ask sufficient questions in voir dire, (3) alleged concession of appellant=s guilt in opening
statements, and (4) failure to poll the jury after the guilty verdict. 
Appellant claims he received ineffective assistance of counsel in the
punishment phase based on his trial counsel=s failure to
emphasize appellant=s good traits in closing argument.








Both the
United States and Texas Constitutions guarantee an accused the right to
assistance of counsel.  U.S. Const.
amend. VI; Tex. Const. art. I, ' 10; see Tex. Code Crim. Proc. Ann. art. 1.051
(Vernon 2005).  This right necessarily includes the right to reasonably
effective assistance of counsel.  Strickland v. Washington, 466 U.S.
668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see Ex parte
Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997).  To prove ineffective
assistance of counsel, appellant must show that (1) trial counsel=s representation was deficient in
that it fell below an objective standard of reasonableness, based on prevailing
professional norms; and (2) the deficiency prejudiced appellant in that there
is a reasonable probability that the result of the proceeding would have been
different but for trial counsel=s deficient performance.  Strickland, 466 U.S. at 687,
104 S. Ct. at 2064; Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999).  Appellant bears the burden of proving his claims by a
preponderance of the evidence.  Jackson v. State, 973 S.W.2d 954, 956
(Tex. Crim. App. 1998).

In assessing appellant=s claims, we apply a strong
presumption that trial counsel was competent.  Thompson, 9 S.W.3d at
813.  We presume that trial counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy, unless that
presumption is rebutted.  See id. at 813B814; Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  This standard has never been
interpreted to mean that the accused is entitled to errorless or perfect
counsel.  Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). 
When reviewing a claim of ineffective assistance, we look to the totality of
the representation and not to isolated instances of error or to only a portion
of the trial record to determine that the accused was denied a fair trial.  Thompson,
9 S.W.3d at 813.








A claim
for ineffective assistance of counsel must be firmly supported in the record.  Bone
v. State, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002).  When, as in this
case, there is no proper evidentiary record developed at a hearing on a motion
for new trial, it is difficult to show that trial counsel=s performance was deficient.  See
id. at 833.  Trial counsel may have had a specific strategy for his
conduct, and a reviewing court may not speculate on trial counsel=s motives in the face of a silent
record.  Thompson, 9 S.W.3d at 814.  If there is no hearing or if trial
counsel does not appear at the hearing, an affidavit from trial counsel becomes
almost vital to the success of an ineffective-assistance claim.  Stults v.
State, 23 S.W.3d 198, 208-09 (Tex. App.CHouston [14th Dist.] 2000, pet.
ref'd).  On such a silent record, this court can find ineffective assistance of
counsel only if the challenged conduct was Aso outrageous that no competent
attorney would have engaged in it.@  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005).  

Failure to File Motion for Investigator

Appellant claims that his trial counsel was deficient in
failing to file a motion for an investigator.  According to appellant, an
investigator would have been helpful in investigating Arias=s background and ATony=s@ background, and
the investigator could have testified on appellant=s behalf.  First,
the record does not show that any failure to file a motion for an investigator
was not sound trial strategy or due to trial counsel=s
ineffectiveness.  See Thompson, 9 S.W.3d at 813; Hammond v. State,
942 S.W.2d 703, 710 (Tex. App.CHouston [14th Dist.] 1997, no pet.)
(failing to file pre-trial motions suggests trial strategy rather than
deficient performance).  The decision not to pursue pre-trial motions is
considered trial strategy because such motions may not have assisted the
defense.  See Mares v. State, 52 S.W.3d 886, 891 (Tex. App.CSan Antonio 2001,
pet. ref=d).  Moreover,
appellant does not indicate what evidence the investigator would have
uncovered, whether the evidence would have been favorable to his defense, or
whether the evidence could have affected the outcome of his trial.  See Smith
v. State, No. 14-06-00328-CR, 2007 WL 4200590, at *2 (Tex. App.CHouston [14th
Dist.] Nov. 29, 2007, pet. ref=d) (mem. op., not designated for
publication); Dennis v. State, No. 12-01-00179-CR, 2002 WL 31445299, at
*2 (Tex. App.CTyler Oct. 31, 2002, pet. dism=d) (not designated
for publication).  Any failure to file a motion for an investigator does not
amount to ineffective assistance absent a showing in the record that this
conduct was not sound trial strategy or was prejudicial to the outcome of this
case.  See Thompson, 9 S.W.3d at 813; Smith, 2007 WL 4200590, at
*2; Hammond, 942 S.W.2d at 710.

 








Alleged Failure to Ask Sufficient Questions During Voir
Dire

Appellant claims ineffective assistance of counsel based on
his trial counsel=s failure to question venire members
during voir dire about the burden of proof, reasonable doubt, being victims of
crime, connection to law enforcement, and range of punishment.  Additionally,
appellant claims that his trial counsel failed to sufficiently question venire
members about the law of parties.  The record reflects that before appellant=s trial counsel
conducted voir dire, the trial judge and the prosecutor questioned venire
members about the burden of proof and reasonable doubt.  Failure to ask
questions during voir dire does not necessarily mean that defense counsel=s conduct was
deficient; moreover, such conduct does not amount to behavior so outrageous no
competent attorney would have engaged in it.  See Goodspeed, 187 S.W.3d
at 392.  Appellant cannot demonstrate on this record that his trial counsel=s failure to ask
venire members about some topics was prejudicial or not sound trial strategy.  See
Williams v. State, 970 S.W.2d 182, 184 (Tex. App.CHouston [14th
Dist.] 1998, pet. ref=d) (characterizing decision to forgo some
questions during voir dire as sound trial strategy in light of trial judge=s extensive
participation in voir dire); Jackson v. State, 491 S.W.2d 155, 156 (Tex.
Crim. App. 1973) (indicating that length of voir dire questioning could be
dictated by trial strategy).  On this record, we cannot conclude appellant=s trial counsel=s conduct has been
shown to be deficient.

Alleged Concession of Guilt in Opening Statement

Appellant claims ineffective assistance based on the
following remarks made by his trial counsel in his opening statement:

Joe was in it for the ride.  He was in the back seat.  He jumps in the
front seat.  He wants to get out of there. He wants to get higher than he was but
now stands guilty of aggravated robbery, which, ladies and gentlemen, I think
you=ll find by the end of the trial and
on the Court=s charge should be unauthorized use
of a motor vehicle.








On this record, we cannot speculate as to whether appellant=s trial counsel
intended to concede appellant=s guilt, or whether trial counsel simply
misspoke as the State argues, or whether counsel=s remarks were
intended to support a strategic decision.  See Thompson, 9 S.W.3d at 814.  However, a
concession of guilt is an acceptable trial strategy for defense counsel to
incorporate in an attempt, as in this case, to persuade the jury to find the
accused guilty of a lesser offense.  See Hathorn v. State, 848 S.W.2d
101, 118 (Tex. Crim. App. 1992); Belton v. State, 900 S.W.2d 886, 901
(Tex. App.CEl Paso 1995, pet. ref=d).  Therefore,
this conduct did not deprive appellant of effective assistance of counsel.  See
Hathorn, 848 S.W.2d at 118.

Failure to Poll the Jury

Appellant claims he received ineffective assistance of
counsel when his trial counsel failed to poll the jury at the end of the
guilt-innocence phase.  The jury reached a unanimous verdict of Aguilty@ after one and a
half hours of deliberation.  The record does not indicate that the jurors
experienced conflict in their deliberations.  The trial court offered the
parties an opportunity to poll the jury, which appellant=s counsel
declined.  Following the verdict, the trial court held a lunch recess.  After
this recess, which lasted roughly one and a half hours, appellant=s trial counsel
asked the trial court to poll the jury.  The trial court declined to do so.  AWhen the jury
agrees upon a verdict, . . . and neither party requests a poll of the jury, the
verdict shall be entered upon the minutes of the court.@  Tex. Code Crim. Proc. Ann. art. 37.04
(Vernon 2006).  Requesting that the jury be polled is not mandatory, and absent
evidence within the record for a need to poll the jury, appellant=s trial counsel=s conduct was not
deficient for failing to request the court to poll the jury.  See Tex. Code Crim. Proc. Ann. arts. 37.04, 37.05 (Vernon 2006); McDade
v. State, No. 06-01-00134-CR, 2002 WL 31719501, at *5 (Tex. App.CTexarkana Dec. 5,
2002, no pet.) (mem. op., not designated for publication). 

Failure to Emphasize Appellant=s Good Character
Traits in Closing Argument








Appellant claims that at the end of the punishment phase,
his trial counsel was ineffective because he did not emphasize appellant=s good character
traits in his closing argument.  Appellant=s trial counsel=s closing argument
was brief.  However, brevity of an argument does not show ineffectiveness of
counsel; in fact, sometimes brevity is very effective.  Reese v. State,
905 S.W.2d 631, 638 (Tex. App.CTexarkana 1995, pet. ref=d).  Choosing what
type of closing argument to make is a matter of trial strategy.  Ortiz v.
State, 866 S.W.2d 312, 315 (Tex. App.CHouston [14th
Dist.] 1993, pet. ref=d).  Applying strategy in closing argument
does not constitute ineffective assistance of counsel.  Jenkins v. State,
870 S.W.2d 626, 631 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d).  The record is
silent as to why appellant=s trial counsel did not argue appellant=s positive
character traits; however, to find such conduct ineffective, this court would
have to speculate as to trial counsel=s strategy.  See Thompson, 9 S.W.3d at 814.  

On this record, appellant cannot rebut the presumption that
any of his trial counsel=s conduct, of which appellant complains,
is sound trial strategy.  See Thompson,
9 S.W.3d at 813; Jackson, 877 S.W.2d at 771.  Furthermore,
appellant has failed to demonstrate actual prejudice by showing that the
outcome of the trial or punishment would have been different but for his trial
counsel=s conduct.  See Thompson, 9 S.W.3d at 812; Jackson, 973 S.W.2d at 956 . Therefore, we
overrule appellant=s third and fourth issues.  

Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

Judgment rendered
and Memorandum Opinion filed June 3, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).